UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| SPECIALTY CARTRIDGE, INC., d/b/a Atlanta Arms | ) ) | CASE NO. 25-55193-pwb |
| | ) | |
| Debtor | ) | |
| | ) | |

**MOTION FOR (1) ORDER AUTHORIZING USE OF CASH COLLATERAL TO AVOID IMMEDIATE AND IRREPARABLE HARM AND GRANTING RELATED RELIEF, AND (2) FINAL ORDER AUTHORIZING CASH COLLATERAL USE**

COMES NOW Specialty Cartridge, Inc. d/b/a Atlanta Arms, debtor and debtor in possession in the above-styled chapter 11 case ("Debtor"), by and through the undersigned counsel, and hereby files this *Motion for (1) Order Authorizing Use of Cash Collateral to Avoid Immediate and Irreparable Harm and Granting Related Relief, and (2) Final Order Authorizing Cash Collateral Use* (the "Motion") for the entry and approval of an order, pursuant to 11 U.S.C. §§ 105 and 363 and Fed. R. Bankr. P. 2002 and 4001 of the Federal Rules of Bankruptcy Procedure, authorizing Debtor's use of cash collateral on an emergency basis to operate its business in accordance with the proposed budget (the "Budget") attached hereto as Exhibit "A" and the proposed Interim Order (as defined below) attached as Exhibit "B." Debtor also seeks related authority to (i) fulfill customer orders in the ordinary course and (ii) refund certain customer deposits. In support hereof, Debtor shows as follows:

**CONCISE STATEMENT OF RELIEF SOUGHT**

**Relief Sought:** Authority to use cash collateral on an interim basis and, pending a final hearing, final authority to use cash collateral

**Entity with Interest
In Cash Collateral:** Pinnacle Bank

1

| | |
|---|---|
| **Purposes for the Use of Cash Collateral:** | Payment of operational expenses and administrative expenses in accordance with the Budget attached as Exhibit "A" |
| **Duration:** | Through the date the Court holds a hearing on final approval (See, Paragraph 10 of the Motion; Paragraph 2 of the Proposed Order) |
| **Adequate Protection:** | A lien on all postpetition property of Debtor of the kind held by Pinnacle Bank, to the same extent and in the same priority as existed on the Petition Date, excluding Chapter 5 actions (Paragraph 14 and 19 of the Motion; Paragraph 3 of the Proposed Order). |

## Introduction

1.  On May 7, 2025 (the "Petition Date"), Debtor filed its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (as amended, modified, or supplemented, the "Bankruptcy Code"). In accordance with 11 U.S.C. §§ 1107 and 1108 of the Bankruptcy Code, Debtor continues to operate its business as debtor in possession. In addition, no trustee or examiner has been appointed.

2.  This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Debtor consents to the entry of final order and judgments by the Bankruptcy Court.

3.  The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105 and 363.

## Background

5.  Debtor is primarily located at 9126 Industrial Blvd, Covington, GA 30014 (the "Facility") and is engaged in the business of (i) manufacturing ammunition and ammunition related components such as projectiles and casings, and (ii) contract ammunition loading services

2

for other manufacturers. SCI also has equipment located at a contract manufacturing facility operated by Grandeur Fasteners at 18796 East State Highway 10, Danville, AR 72833 (the "Arkansas Facility").

6. American Components Manufacturing and Engineering, Inc. ("ACME") owns three pieces of equipment located at the Facility consisting of two Atesci Trim and Turn Machines and an Invernizzi Blank and Finish Press with Single Standard Tool Set (the "ACME Equipment"). ACME does not operate. The ACME Equipment is utilized by Debtor in the operations of its business.

## Cash Collateral

7. Debtor asserts that is indebted to Pinnacle Bank in the approximate amount of $6,181,600, pursuant to a (i) Business Man Line of Credit Agreement (rounded to $741,000), (ii) Regular Bank Line of Credit (rounded to $903,000), (iii) Master Lease Agreement #42094GA-111 with Schedules covering the Arkansas Equipment (rounded to $3,213,000), 2013 Ammoload Machine (rounded to $8,600), and WF 1010 Machine (rounded to $33,000), and (iii) guaranty of the ACME obligations under Master Lease Agreement 36766GA-111 covering the ACME Equipment (rounded to $1,283,000)

8. Pinnacle asserts a security interest in Debtor's receivables, inventory, certain equipment at the Facility, including the ACME Equipment, and the equipment at the Arkansas Facility.

## Relief Requested

### Use of Cash Collateral on an Interim Basis in Accordance with the Budget

9. By this Motion, Debtor seeks interim authorization to use cash collateral in accordance with the Budget pending a final hearing (hereinafter, the period for which interim

3

authority is sought is referred to as the "Interim Period"). Debtor proposes to use cash collateral for general and administrative expenses as set forth in the Budget. The expenses incurred by Debtor and for which cash collateral will be used will all be incurred in the normal and ordinary course of Debtor's Business. A proposed *Interim Order Authorizing Limited Use of Cash Collateral and Providing Adequate Protection* (the "Interim Order") is attached hereto as Exhibit "B."

10. 11 U.S.C. § 363(c)(2) provides that a debtor in possession may not use cash collateral unless an entity that has an interest in such cash collateral consents or the Court approves the use, conditioned on provision of adequate protection. 11 U.S.C. § 363(o) provides that at a hearing on the use of cash collateral, the entity asserting an interest in the cash collateral has the burden of proof on the issue of the validity, priority, or extent of such interest, and the debtor in possession has the burden of proof on the issue of adequate protection. Fed. R. Bankr. P. 4001(b)(2) provides that the Court may not hold a final hearing on a motion to use cash collateral earlier than 14 days after service of the motion, but may authorize the use of cash collateral prior to a final hearing as necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

11. Debtor requests authority to use cash collateral for the purpose of avoiding immediate and irreparable harm to the estate. The authority to continue using cash collateral should continue until the Court rules on Debtor's request following a final hearing.

12. Debtor recognizes that Pinnacle Bank is entitled to adequate protection within the meaning of 11 U.S.C. §§ 361 and 363 to the extent its security interests and liens are valid and perfected. Debtor acknowledges that, in consideration of Debtor's use of cash collateral,

4

Pinnacle Bank is entitled to adequate protection of its security interests in and liens on the cash collateral to the extent its security interests and liens are valid and perfected.

13. Debtor has agreed to provide adequate protection to Pinnacle Bank in the form of a postpetition replacement lien, as follows: In connection with Debtor's use of cash collateral during the Interim Period and to provide Pinnacle Bank adequate protection in respect of Debtor's use of such cash collateral, Debtor agrees, subject to approval of this Court, to grant Pinnacle Bank valid and properly-perfected replacement liens (an "Adequate Protection Lien"), pursuant to 11 U.S.C. § 361(2) on all property acquired by Debtor after the Petition Date that is the same or similar nature, kind, or character as the collateral to which any valid and perfected security interest of Pinnacle Bank attached prepetition and in the same priority as existed on the Petition Date, except that no such replacement lien shall attach to the proceeds of any avoidance actions under Chapter 5 of the Bankruptcy Code (the "Chapter 5 Actions"). The Adequate Protection Lien shall be deemed automatically valid and perfected upon entry of this Order.

### Final Authority for Use of Cash Collateral

14. Debtor further requests that the Court schedule a final hearing on cash collateral use and, following such hearing, enter a final order authorizing cash collateral use.

### Basis for Relief

15. Debtor has agreed to provide adequate protection as contemplated by 11 U.S.C. § 363(c)(2) and hereby seek the Court's approval thereof. The Bankruptcy Code does not explicitly define "adequate protection," but does provide a non-exclusive list of the means by which a debtor may provide adequate protection, including "other relief" resulting in the "indubitable equivalent" of the secured creditor's interest in such property. 11 U.S.C. § 361. What constitutes adequate protection must be evaluated on a case-by-case basis. *In re Swedeland Dev. Group*

*Inc.,* 16 F.3d 552, 564 (3rd Cir. 1994) (*citing In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. l987)); *In re Martin*, 761 F.2d 472, 476 (8th Cir. 1985).

16. Adequate protection is meant to ensure that the secured lender receives the value for which it originally bargained. *Swedeland*, 16 F.3d at 564 (*citing O'Connor*, 808 F.2d at 1396) ("the whole purpose of adequate protection for a creditor is to ensure that the creditor receives the value for which he bargained pre bankruptcy"). Courts have noted that "the essence of adequate protection is the assurance of the maintenance and continued recoverability of the lien value during the interim between the filing . . . and the confirmation." *In re Arriens*, 25 B.R. 79, 81 (Bankr. D.Or. 1982). The focus of the requirement is to protect a secured creditor from diminution in value during the use period. *See In re Kain*, 86 B.R 506, 513 (Bankr. W.D. Mich.1988); *In re Becker Indus. Corp.,* 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); *In re Ledgmere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990).

17. Debtor's requested use of cash collateral as set forth in the Budget and the protections proposed to be afforded to Pinnacle Bank in the Proposed Order, in light of the circumstances, are reasonable, appropriate, and sufficient to satisfy the legal standard of "adequate protection."

18. The Bankruptcy Code expressly provides that "granting a replacement lien is a means of adequate protection". 11 U.S.C. § 361(2). Granting replacement liens provides ample adequate protection of the secured creditor's interest in cash collateral. *See e.g. In re O'Connor*, 808 F.2d at 1393; *In re Dixie-Shamrock Oil & Gas. Inc.*, 39 B.R. 115, 118 (Bankr. M.D. Tenn. 1984). Debtor will adequately protect the interests of Pinnacle Bank in cash collateral by providing Adequate Protection Liens on Debtor's property (excluding Chapter 5 Action) to the

extent Debtor's use of cash collateral results in a postpetition decrease in the value securing the claims of Pinnacle Bank.

19. The continuation of Debtor's business will preserve its going-concern value. If Debtor is not allowed to use cash collateral, its business will likely shut down. Debtor requires the use of cash collateral in order to protect and preserve the value of its business.

20. It is well established that a bankruptcy court, where possible, should resolve issues in favor of preserving the business of the debtor as a going concern. "A debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use "cash collateral" in its effort to rebuild. Without the availability of cash to meet daily operating expenses such as rent, payroll, utilities, etc., the congressional policy favoring rehabilitation over economic failure would be frustrated." *In re George Ruggiere Chrysler-Plymouth, Inc.,* 727 F.2d 1017, 1019 (11th Cir. 1984).

21. As discussed above, Debtor will use cash collateral during the Interim Period in the ordinary course of its business. If Debtor cannot continue to use cash collateral during the Interim Period, it likely will be forced to cease operations and convert to Chapter 7. This cessation would irreparably damage the value of Debtor's assets. In contrast, granting authority will allow Debtor to maintain operations and preserve the going concern value.

22. Debtor believes that use of cash collateral (a) during the Interim Period in order to avoid irreparable harm pursuant to the terms and conditions set forth above, and (b) on a final basis following a final hearing on cash collateral use, is fair and reasonable and adequately protects Pinnacle Bank. For all of the reasons stated above, approval of the Motion is proper.

WHEREFORE, Debtor respectfully requests that the Court enter an order (A) authorizing Debtor (i) to use cash collateral pursuant to the terms set forth above and in accordance with the

Budget during the Interim Period, including authority to fulfill or refund customers providing prepetition deposits, (ii) to grant the Adequate Protection Liens set forth above in connection with the use of the cash collateral, and (B) setting a final hearing hereon at least fourteen (14) days after the entry of an interim order on this Motion, and (C) for such other and further relief as the Court deems just and proper.

Dated: May 8, 2025

                                      LAMBERTH, CIFELLI,
                                      ELLIS & NASON, P.A.
                                      *Proposed Counsel for Debtor*

                                    By: */s/ G. Frank Nason, IV*
                                            G. Frank Nason, IV
                                            Georgia Bar No. 535160
                                            fnason@lcenlaw.com

6000 Lake Forrest Drive, NW
Suite 290
Atlanta, Georgia 30328
(404) 262-7373

**EXHIBIT "A"**

**BUDGET**

| Week Ending | 16-May | 23-May | 30-May | 6-Jun | 13-Jun |
|---|---|---|---|---|---|
| Revenues | $208,000 | $39,000 | $59,000 | $ 98,000.00 | $139,000 |
| Salaried | $17,482.31 | $17,482.31 | $17,482.31 | $17,482.31 | $17,482.31 |
| Hourly | $7,093.50 | $7,093.50 | $7,093.50 | $7,093.50 | $7,093.50 |
| Medical Ins. | $11,631.49 | | $11,631.49 | | |
| 401(k) Match | $136.00 | $136.00 | $136.00 | $136.00 | $136.00 |
| Insurance | | | | $ 8,837.20 | |
| Rent | | | | $34,881 | |
| Maintenance | $900 | $900 | $900 | $900 | $900 |
| Ballistic Agency | | | $7,000 | | |
| Computer/Security | $ 1,152.00 | | | | $ 1,152.00 |
| Materials | | $46,800.00 | $ 88,000.00 | $ 43,000.00 | $ 13,000.00 |
| | $38,395.30 | $72,411.81 | $132,243.30 | $112,330.01 | $39,763.81 |

**EXHIBIT "B"**

**PROPOSED ORDER**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | CHAPTER 11 |
| SPECIALTY CARTRIDGE, INC., d/b/a ) | |
| Atlanta Arms ) | CASE NO. 25-55193-pwb |
| ) | |
| Debtor ) | |
| ) | |

**INTERIM ORDER AUTHORIZING DEBTOR TO USE
CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION**

This matter came before the Court on May 9, 2025 for hearing (the "Preliminary Hearing") on the *Motion of Debtor for (1) Order Authorizing Use of Cash Collateral to Avoid Immediate and Irreparable Harm and Related Relief, and (2) Final Order Authorizing Cash Collateral Use* (the "Motion")[1] filed by of Specialty Cartridge, Inc., d/b/a Atlanta Arms ("Debtor"). Upon consideration of the Motion, representations of counsel at the Preliminary Hearing, and all other matters of record, the Court hereby finds:

A.    Debtor filed its petition for relief under chapter 11 of the Bankruptcy Code on May 7, 2025 (the "Petition Date"). Pursuant to 11 U.S.C. §§ 1107 and 1108, Debtor remains in

---

[1] All capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

possession of its assets and has continued the operation and management of its business in this chapter 11 case.

B.	This Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2), involving matters under 11 U.S.C. §§ 361 and 363. Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

C.	Debtor asserts that is indebted to Pinnacle Bank in the approximate amount of $6,181,600, pursuant to a (i) Business Man Line of Credit Agreement (rounded to $741,000), (ii) Regular Bank Line of Credit (rounded to $903,000), (iii) Master Lease Agreement #42094GA-111 with Schedules covering the Arkansas Equipment (rounded to $3,213,000), 2013 Ammoload Machine (rounded to $8,600), and WF 1010 Machine (rounded to $33,000), and (iii) guaranty of the ACME obligations under Master Lease Agreement 36766GA-111 covering the ACME Equipment (rounded to $1,283,000)

D.	Debtor asserts that Pinnacle Bank is entitled to adequate protection of its security interests in and liens on the cash collateral to the extent its security interests and liens are valid and perfected.

E.	Debtor asserts that it has provided actual notice of the Motion and the relief requested therein to Pinnacle Bank, each of Debtor's Twenty Largest Unsecured Creditors, and the United States Trustee.

F.	Debtor alleges that an immediate need exists for Debtor to obtain use of the Cash Collateral to fund critical operations. A schedule of the Debtor's revenues and cash requirements is set forth in the budget (the "Budget") attached to the Motion as Exhibit "A."

G.	Debtor alleges that to preserve the value of its assets, it requires the use of Cash Collateral in accordance with this Order.

H.    Good cause has been shown for the entry of this Order and authorization for Debtor to use Cash Collateral pending the final hearing on the Motion pursuant to Bankruptcy Rule 4001(b) (the "Final Hearing"). Among other things, entry of this Order will minimize disruption, will increase the possibility for a successful reorganization, and is in the best interests of Debtor, its creditors, and other parties-in-interest.

Accordingly, it is hereby

**ORDERED, ADJUDGED AND DECREED:**

1.    The Motion is GRANTED on an interim basis. Subject to the terms hereof, this Order is effective immediately.

2.    Debtor is authorized to use Cash Collateral as set forth herein from the date of the entry of this Order through and including the date of the Final Hearing on the Motion (the "Interim Period"). The Interim Period may be extended by further order of the Court.

3.    As partial adequate protection of its interests in any Cash Collateral expended by Debtor, Pinnacle Bank is hereby granted a valid and properly-perfected replacement lien (an "Adequate Protection Lien"), pursuant to 11 U.S.C. §361(2) on all property acquired by Debtor after the Petition Date that is the same or similar nature, kind, or character as the collateral to which any valid and perfected security interest of Pinnacle Bank attached prepetition and in the same priority as existed on the Petition Date, except that no such replacement lien shall attach to the proceeds of any avoidance actions under Chapter 5 of the Bankruptcy Code (the "Chapter 5 Actions"). The Adequate Protection Lien shall be deemed automatically valid and perfected upon entry of this Order.

4.  This Order is entered without prejudice to the rights of Pinnacle Bank or Debtor to seek a modification of the terms hereof after notice and a hearing, and without prejudice to the right of Debtor to object to any claim, or the right of Pinnacle Bank seek any relief available.

5.  The Court shall hold a Final Hearing on the Motion at **10:00 a.m.** on **May \_\_\_, 2025**, in Courtroom **1401**, Richard B. Russell Federal Building, 75 Ted Turner Drive, S.W. Atlanta, Georgia 30303. which may be attended in person or via the Court's Virtual Hearing Room. You may join the Virtual Hearing Room through the "Dial-in and Virtual Bankruptcy Hearing Information" link at the top of the homepage of the Court's website, www.ganb.uscourts.gov, or the link on the judge's webpage, which can also be found on the Court's website. Please also review the "Hearing Information" tab on the judge's webpage for further information about the hearing. You should be prepared to appear at the hearing via video, but you may leave your camera in the off position until the Court instructs otherwise. Unrepresented persons who do not have video capability may use the telephone dial-in information on the judge's webpage.

6.  The instant Order shall remain valid until such hearing, or any continuation thereof, has been held and a ruling entered.

7.  Debtor's Counsel shall serve a copy of this Order on all parties-in-interest within three (3) business days of entry and promptly thereafter file a certificate of service evidencing the method and manner of service.

[END OF DOCUMENT]

**Preparer's Signature on Next Page**

**Prepared and presented by:**

LAMBERTH, CIFELLI,
 ELLIS & NASON, P.A.
*Proposed Counsel for Debtor*

By: */s/ G. Frank Nason, IV*
       G. Frank Nason, IV
       Georgia Bar No. 535160
6000 Lake Forrest Drive, N.W., Ste. 290
Atlanta, GA  30328
(404) 262-7373


**Identification of parties to be served:**

G. Frank Nason, IV, Lamberth, Cifelli, Ellis & Nason, P.A., 6000 Lake Forrest Drive, NW, Suite 290, Atlanta, GA 30328

Alan Hinderleider, Office of the United States Trustee, 362 Richard Russell Building, 75 Ted Turner Drive, SW, Atlanta, GA 30303

Michael Pugh, Thompson O'Brien Kemp & Nasuti, PC, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092

**Certificate of Service**

This is to certify that I have on this day electronically filed the foregoing *Motion of Debtor for (1) Order Authorizing Use of Cash Collateral to Avoid Immediate and Irreparable Harm and Granting Related Relief, and for (2) Final Order Authorizing Cash Collateral Use* using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of this document and an accompanying link to this document to the parties who have appeared in this case under the Bankruptcy Court's Electronic Case Filing program.

A separate certificate will reflect service on additional parties by electronic mail.

This 8th day of May, 2025

/s/ *G. Frank Nason, IV*
G. Frank Nason, IV
Georgia Bar No. 535160

6000 Lake Forrest Drive, N.W.
Suite 435
Atlanta, GA  30328
(404) 262-7373